[Cite as *Youngstown Edn. Assn. v. Kimble*, 2016-Ohio-1481.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| YOUNGSTOWN EDUCATION ASSOCIATION OEA/NEA | ) ) ) | CASE NOS. 16 MA 0013 16 MA 0014 |
| PLAINTIFF-APPELLEE | ) ) | |
| VS. | ) ) | OPINION |
| BRENDA KIMBLE, et al. | ) ) | |
| DEFENDANTS-APPELLANTS | ) | |

CHARACTER OF PROCEEDINGS:       Civil Appeals from the Court of
                                Common Pleas of Mahoning County,
                                Ohio
                                Case No. 2015 CV 3108

JUDGMENT:                       Affirmed.

JUDGES:
Hon. Cheryl L. Waite
Hon. Mary DeGenaro
Hon. Carol Ann Robb

                                Dated:  April 8, 2016

[Cite as *Youngstown Edn. Assn. v. Kimble*, 2016-Ohio-1481.]
APPEARANCES:

For Plaintiff-Appellee YEA:

Atty. Charles W. Oldfield
Atty. Ira J. Mirkin
Green Haines Sgambati Co., L.P.A.
City Centre One, Suite 800
100 Federal Plaza East
Youngstown, Ohio 44503

For Defendant-Appellant Brenda Kimble:

Atty. James E. Roberts
Atty. Elizabeth H. Farbman
Atty. Christine Z. Papa
Roth, Blair, Roberts, Strasfeld & Lodge
100 E. Federal Street, Suite 600
Youngstown, Ohio  44503

For Defendants-Appellants Academic
Distress Commission, Brian Benyo,
Barbara Brothers, Laura Meeks, and
Jennifer Roller:

Atty. Mike DeWine
Attorney General of Ohio
Atty. Michael T. Fisher
Assistant Ohio Attorney General
Education Section
615 West Superior Avenue, 11th Floor
Cleveland, Ohio  44113

Atty. James D. Miller
Assistant Attorney General
Health and Human Services Section
30 East Broad Street, 16th Floor
Columbus, Ohio  43215

For Carol L. Staten:

Carol L. Staten, *Pro se*
1870 Selma
Youngstown, OH 44504

WAITE, J.

{¶1} This is a consolidated appeal of a decision granting injunctive and declaratory relief and granting a writ of mandamus. The matter involves the appointment of one of five members of the Academic Distress Commission ("ADC") for the Youngstown City School District. Appellee Youngstown Education Association ("YEA") filed an action against Appellant Brenda Kimble ("Kimble"), President of the Youngstown City School District, and against the ADC to prevent Kimble from appointing Dr. Carol Staten ("Staten") to the ADC, and to prevent the ADC from taking any action until a teacher was appointed to the ADC. The trial court granted a preliminary injunction preventing Kimble from appointing Staten and granted the mandamus action, ordering her to appoint a teacher employed by the school district to the commission within forty-eight hours. The trial court also enjoined the ADC from meeting or taking any action until an appropriate appointment was made.

{¶2} As a preliminary matter, Kimble and ADC attack the YEA's standing in this matter, but it is clear that, based on the allegations in the complaint, YEA represents teachers in the Youngstown School District and R.C. 3302.10, the statute creating the ADC, requires Kimble to appoint a teacher employed by the school district to the ADC. Based on the rules governing the standing of an association to bring an action in favor of its members, the YEA has standing.

{¶3} On appeal, Kimble and ADC argue that the requirements necessary to obtain a preliminary injunction have not been met. The decision to grant a preliminary injunction is reviewed only for abuse of discretion. The record

establishes that the YEA is correct in its argument against both Kimble and the ADC that it would likely succeed on the merits of the complaint, that it would suffer irreparable harm without an injunction, that no third parties will be unjustifiably harmed, and that the injunction serves the public interest. There was no abuse of discretion in the trial court's decision and the judgment of the trial court is affirmed in all respects.

Facts and Procedural History

{¶4} On December 1, 2015, YEA filed an action against Kimble and Staten seeking a temporary restraining order and preliminary injunction to prevent Kimble from appointing Staten to the ADC, and for declaratory judgment defining the meaning of the word "teacher" as used in the relevant statute. The YEA asked the trial court to find that Staten's appointment was contrary to law pursuant to R.C. 3302.10(B)(1)(b). The trial court granted the order on December 2, 2015.

{¶5} On December 8, 2015, YEA amended the complaint to add the ADC and its five individual members as defendants and to request a temporary injunction to prevent the ADC and its members from meeting or taking any official action, and seeking to toll the sixty-day period for the ADC to appoint a CEO as required by R.C. 3302.10(C)(1). This was granted the same day. The YEA amended its complaint a second time seeking a writ of mandamus ordering Kimble to make the appropriate appointment to the ADC within forty-eight hours of the entry of judgment.

{¶6} The matter was referred to a magistrate, and on December 15, 2015, the magistrate issued a decision granting both the preliminary injunction and a writ of

mandamus. The ruling enjoined Kimble from appointing Staten or any other person who is not a teacher employed by the school district to the ADC, ordering her to make her appointment within forty-eight hours, enjoining the ADC from taking any action until the proper appointment of the fifth member of ADC was made, and tolling the sixty-day time period for the ADC to appoint a CEO. The case was set for trial on the merits, presumably to determine whether a permanent injunction should issue.

{¶7}  Both Kimble and ADC filed objections to the magistrate's decision. After a hearing, the court ruled that R.C. 3302.10 did not specifically define the word "teacher" but did require Kimble to appoint a teacher employed by the school district to the ADC. The court gave the word "teacher" its common and ordinary meaning as someone whose occupation is teaching, especially children. The court determined that R.C. 3302.10 did not include administrators such as a principal, vice principal, guidance counselor, or substitute in describing the appointee to the ADC. The court found that Staten was employed as a Utility Substitute Principal and not as a teacher. As the YEA satisfied the requirements for the issuance of a preliminary injunction, the court enjoined Kimble from appointing Staten, or anyone else who is not a teacher employed by the school district, to the ADC. The court also granted the writ of mandamus and ordered Kimble to perform her duty within forty-eight hours of the issuance of judgment. The ADC was enjoined from proceeding with any action until after Kimble made her appointment pursuant to statute. The court also tolled the sixty-day period for the ADC to appoint a CEO until after Kimble made the appropriate appointment to the ADC.

**{¶8}** Both Kimble and the ADC filed timely appeals and this Court ordered an accelerated appellate schedule. Kimble has filed six assignments of error and the ADC has filed two. The first assignment of error of both Appellants deals with YEA's standing to bring its claims. Both parties' remaining assignments of error deal with the preliminary injunction. As there are no assignments of error relating to the writ of mandamus, the trial court's stay of the writ ordering Kimble to appoint an appropriate teacher to the ADC will end as a matter of law when this Court enters judgment.

Appellant Kimble's Assignment of Error No. One and Appellant ADC's Assignment of Error No. One.

THE TRIAL COURT ERRED IN FINDING THAT YEA HAS STANDING TO CHALLENGE DEFENDANT-APPELLANT KIMBLE'S APPOINTMENT TO THE YOUNGSTOWN ACADEMIC DISTRESS COMMISSION.

APPELLEE LACKS STANDING TO CHALLENGE THE APPELLANT-COMMISSION'S ABILITY TO MEET AND ACT.

**{¶9}** The first assignment of error for both Kimble and the ADC asserts that the YEA lacked standing to bring any of its claims against either party. Kimble filed a Civ.R. 12(B)(1) motion to dismiss YEA's complaint on the jurisdictional ground of lack of standing. The trial court overruled the motion.

**{¶10}** A motion to dismiss based on lack of standing does not raise a question of subject matter jurisdiction and cannot be asserted under Civ.R. 12(B)(1). *U.S. Bank Natl. Assn. v. Perdeau*, 6th Dist. No. L-13-1226, 2014-Ohio-5818, ¶ 10. Lack of

standing must be timely raised by a motion under Civ.R. 12(B)(6). "[T]he Supreme Court of Ohio has clarified that a motion to dismiss based on standing is not a jurisdictional issue, and should therefore be raised under Civ.R. 12(B)(6)." *Cox v. Dayton Pub. Schools Bd. of Edn.*, 2nd Dist. No. 26382, 2015-Ohio-620, ¶ 11, citing *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 23.

**{¶11}** A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). For a court to dismiss on this basis, "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. In ruling on a Civ.R. 12(B)(6) motion, the court must accept the factual allegations contained in the complaint as true and draw all reasonable inferences from these facts in favor of the plaintiff. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). If there is a set of facts consistent with the complaint that would allow for recovery, the court must not grant the motion to dismiss. *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144, 573 N.E.2d 1063 (1991). A reviewing court applies a *de novo* standard of review to the trial court's determination under Civ.R. 12(B)(6). *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

{¶12} A party has standing to invoke the jurisdiction of the court if he has, in an individual or representative capacity, some real interest in the subject matter of the action. *State ex rel. Dallman v. Court of Common Pleas*, 35 Ohio St.2d 176, 298 N.E.2d 515 (1973), syllabus. An association such as the YEA has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *State ex rel. Am. Subcontractors Assn., Inc. v. Ohio State Univ.*, 129 Ohio St.3d 111, 2011-Ohio-2881, 950 N.E.2d 535, ¶ 12.

{¶13} The interest at stake in this lawsuit is that R.C. 3302.10 establishes an academic distress commission of five members, one of whom must be appointed by the president of the district board of education, and that appointee must be a "teacher employed by the school district". R.C. 3302.10(B)(1)(b). This is the only member of the commission required to be a teacher. An academic distress commission has broad and far-reaching powers over the school district, including the power to appoint a chief executive officer who "shall exercise complete operational, managerial, and instructional control of the district[.]" R.C. 3302.10(C)(1). YEA asserts that it is the exclusive bargaining representative of teachers in the Youngstown City School District, and this assertion must be accepted as true for purposes of the Civ.R. 12(B)(6) motion. If Kimble's appointment of Staten circumvented the requirement that one member of the commission be a "teacher employed by the district," then it is

clear from the allegations in the complaint that the YEA has both an interest in and has been injured by such appointment, the interest being the right to have a teacher represented by the YEA to be considered for the ADC, and the injury being the complete and utter deprivation of that right.

**{¶14}** It is apparent from this record that if Kimble's action wrongfully prevented or excluded a teacher as defined by the YEA from being appointed to the ADC, her actions effectively prevented 100% of the membership of the YEA from appointment to the ADC and from having any practical influence over the operation, management and instructional control of the district.

**{¶15}** Standing is not an issue that provides a technical rule to prevent aggrieved parties from having their day in court. *Moore v. Middletown*, 133 Ohio St.3d 55, 67, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 47. "Rather, it is a practical concept designed to insure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." *Id.* citing *Fort Trumbull Conservancy, L.L.C. v. Alves*, 262 Conn. 480, 486, 815 A.2d 1188 (2003). In this case, the issues are clearly laid out, there is an undeniable and urgent dispute between the parties, and there has been vigorous representation regarding the different points of view in this litigation.

**{¶16}** The requirements of standing have been met. An individual teacher would have standing to challenge whether Staten is a teacher as defined by R.C. 3302.10, but participation individually is not required. Protecting the rights,

responsibilities, privileges, benefits and status of teachers within the Youngstown School District through participation in the ADC is germane to the YEA's purpose as the exclusive bargaining representative of teachers in the school district. Thus, the trial court correctly determined that the YEA has standing and the first assignments of error of both Kimble and the ADC have no merit.

The ADC's Assignment of Error No. Two

APPELLEE FAILED TO SUSTAIN ITS BURDEN OF PROOF WITH REGARD TO ITS MOTION FOR PRELIMINARY INJUNCTION, AND THEREFORE THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING THE MOTION FOR PRELIMINARY INJUNCTION.

Kimble's Assignments of Error Nos. Two through Six

THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING YEA'S MOTION FOR PRELIMINARY INJUNCTION.

THE TRIAL COURT ERRED IN FINDING THAT YEA IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS.

THE TRIAL COURT ERRED IN FINDING THAT YEA WILL SUFFER IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF.

THE TRIAL COURT ERRED IN FINDING THAT THIRD PARTIES WILL NOT BE HARMED BY THE REQUESTED INJUNCTIVE RELIEF.

THE TRIAL COURT ERRED IN FINDING THAT THE PUBLIC INTEREST WILL BE SERVED BY THE REQUESTED INJUNCTIVE RELIEF.

**{¶17}** All of the remaining assignments of error deal with the propriety of issuing the preliminary injunctions. Kimble was enjoined from appointing Staten or any other person who is not a teacher employed by the school district to the ADC. The ADC was enjoined from proceeding with any action pursuant to R.C. 3302.10 until an appropriate appointment is made by Kimble. The statutory period of time for the ADC to appoint a CEO was also tolled.

**{¶18}** In seeking a preliminary injunction, the following four factors are relevant: (1) there is a substantial likelihood of success on the merits, (2) the plaintiff will suffer irreparable harm if the injunction is not granted, (3) no third parties will be unjustifiably harmed by an injunction, and (4) the public interest will be served by an injunction. *Martin v. Lake Mohawk Property Owner's Assn.*, 7th Dist. No. 04-CA-815, 2005-Ohio-7062, ¶ 36, citing *Blakeman's Valley Office Equip., Inc. v. Bierdman*, 152 Ohio App.3d 86, 2003-Ohio-1074, 786 N.E.2d 914, ¶ 19 (7th Dist.).

**{¶19}** No single factor is determinative. *King's Welding & Fabricating, Inc. v. King*, 7th Dist. No. 05-CA-828, 2006-Ohio-5231, ¶ 13.

**{¶20}** An appellate court uses an abuse of discretion standard in reviewing the decision to grant an injunction by a trial court. *Davis v. Domestic Linen Supply Co.*, 7th Dist. No. 06-MA-87, 2007-Ohio-3498, ¶ 11, citing *Collins v. Moran*, 7th Dist. No. 02-CA-218, 2004-Ohio-1381. An abuse of discretion is more than an error of

judgment; it implies an attitude that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

1. "Teacher" definition

**{¶21}** Regarding Kimble's injunction, the first factor on review is the likelihood of the YEA's success on the merits. The primary issue that needs to be resolved, and the issue before the trial court in declaratory judgment, is whether Staten is a "teacher employed by the school district" pursuant to R.C. 3302.10(B)(1)(b). R.C. 3302.10(B)(1)(b) does not define "teacher" or "teacher employed by the district." There is no dispute that Staten is currently employed as a "utility substitute principal" or "utility administrator". Kimble argues that Staten qualifies as a teacher for purposes of the statute because she is licensed as a teacher, was a teacher from 1979-1994, and under her current job title she periodically *may* perform as a classroom teacher when a substitute teacher is not available. She also works with students who have academic problems. Kimble relies in part on the definition of "teacher" found in R.C. 3319.09(A), which states:

> "Teacher" means all persons licensed to teach and who are employed
> in the public schools of this state as instructors, principals, supervisors,
> superintendents, or in any other educational position for which the state
> board of education requires licensure under sections 3319.22 to
> 3319.31 of the Revised Code including persons having a license issued
> pursuant to sections 3319.22 to 3319.31 of the Revised Code and
> employed in an educational position, as determined by the state board

of education, under programs provided for by federal acts or regulations and financed in whole or in part from federal funds, but for which no licensure requirements for the position can be made under the provisions of such federal acts or regulations.

**{¶22}** Since the definition of "teacher" found in R.C. 3319.09 includes principals and supervisors, and because there is no dispute that Staten is employed by the school district, Kimble concludes that Staten is a proper person to be appointed to the ADC, thus YEA has no chance of success on the merits.

**{¶23}** The YEA argues that "teacher" is undefined in R.C. 3302.10, hence the trial court was correct to use the ordinary and natural meaning of the word. "[W]ords in a statute should be construed in their ordinary and natural meaning * * * unless a different intention appears in the statute." *State ex rel. Gareau v. Stillman*, 18 Ohio St.2d 63, 64, 247 N.E.2d 461 (1969). The trial court defined "teacher" as a person whose occupation is teaching others, especially children.

**{¶24}** The definition of "teacher" found in R.C. 3319.09 has no application beyond the context of that specific statute because the definition is expressly limited to apply only to R.C. 3319.08 through 3319.18. The very subject matter of R.C. 3319.08 et seq. works against Kimble's argument, since it deals with two broad groups of people employed by a school district; not only to licensed professionals but to people who are employed but are not licensed to teach. Kimble seeks to have this definition establish Staten as a teacher. The broad-brush definition found in R.C. 3319.09 places all licensed employees, including administrators, under the umbrella

of "teacher" merely to distinguish them from non-licensed school employees. It is readily apparent, then, why the statute specifically self-limits such a broad definition only to those few sections of the Ohio Revised Code.

**{¶25}** In contrast, while R.C. 3302.10 contains no definition of "teacher," the chapter at one point uses the word "teacher" in conjunction with allocating teacher class loads, and later in the chapter has language dealing with district principals. The latter distinction would be unnecessary under Kimble's theory, while the former reference does provide guidance into defining the use of the word "teacher" as a person who operates in a classroom.

**{¶26}** Kimble appears to argue that the words "teacher" and "employed" in R.C. 3302.10 do not need to be read together, and that the statute would be satisfied as long as a person is licensed as a teacher and is employed in any manner by the district. This is a tortured reading of the statute and runs contrary to the canon of statutory construction that words are to be given their ordinary meaning. To be construed as argued by Kimble, the statute should state "an employee of the district licensed as a teacher."

**{¶27}** Kimble takes issue with the modifier "especially children" in the trial court's definition, but since the subject matter of this case covers only teachers employed by a public school system rather than a college or adult school system, this verbiage was, at most, a redundancy. While not all Youngstown City school students are minors, it is apparent that the vast majority are children.

**{¶28}** Because the trial court was correct in using the ordinary and natural meaning of the word "teacher" absent a specific definition to the contrary, there was no abuse of discretion when the trial court determined that the YEA was highly likely to succeed on the merits of the underlying case. In fact, the trial court appears to have *de facto* ruled in the YEA's favor in declaratory judgment in this respect.

**{¶29}** Kimble also takes issue with the finding that the YEA would suffer irreparable harm without injunctive relief. Although this factor was not emphasized by the parties, it is evident from the record and from R.C. 3302.10 that only one member of the ADC is required to be a teacher, the ADC has immense power over the school district, the YEA represents the teachers of the school district, and that one of the primary means of providing teachers with a voice in the control and operation of the ADC, and consequently over the control and operation of the school district, is the appointment of a teacher to the ADC.

**{¶30}** Kimble next argues that third parties will be harmed by the injunctive relief. The actual factor to be considered is whether third parties will be "unjustifiably" harmed. *Blakeman's Valley Office Equip., Inc., supra* at ¶ 19. Regardless, Kimble argues that Staten will be harmed, but Staten is a party to this case, not a third party. Nor does Kimble cite to any other persons or groups who may be unjustifiably harmed.

**{¶31}** Finally, Kimble argues that the public interest will not be served by injunctive relief. Kimble argues that the public has a right to have R.C. 3302.10 enforced as written and that Staten is a teacher. We have already determined that

the trial court was correct in its resolution of the definition of "teacher" for statutory purposes and have rejected Kimble's argument in this regard. There is no abuse of discretion in the trial court's decision to interpret the statute using the ordinary and natural meaning of the words used in the statute. Hence, it is in the public interest to require her to follow the statute.

**{¶32}** For all the reasons mentioned above, Kimble's second through sixth assignments of error have no merit.

2. Tolling the ADC's timeline

**{¶33}** As regards the preliminary injunction against the ADC preventing it from taking action until the appropriate fifth member is appointed by Kimble, R.C. 3302.10(B)(1) states:

(B)(1) *The academic distress commission shall consist of five members* as follows:

(a) Three members appointed by the state superintendent, one of whom is a resident in the county in which a majority of the district's territory is located;

(b) One member appointed by the president of the district board of education, who shall be a teacher employed by the district;

(c) One member appointed by the mayor of the municipality in which a majority of the district's territory is located or, if no such municipality

exists, by the mayor of a municipality selected by the state superintendent in which the district has territory.

Appointments to the commission shall be made within thirty days after the district is notified that it is subject to this section. Members of the commission shall serve at the pleasure of their appointing authority. The state superintendent shall designate a chairperson for the commission from among the members appointed by the state superintendent. The chairperson shall call and conduct meetings, set meeting agendas, and serve as a liaison between the commission and the chief executive officer appointed under division (C)(1) of this section. (Emphasis added.)

**{¶34}** There is no ambiguity in the statute as to the makeup of the ADC: it must include five members, one of whom must be a teacher employed by the district. As earlier stated, YEA's likelihood of success on the merits in this regard is clearly established. The ADC cannot meet without five members, and the fifth member is undetermined pending Kimble's appointment of an appropriate teacher. As we have earlier discussed, the trial court has *de facto* resolved the YEA's declaratory judgment action in its favor. As the mandamus action was not appealed, Kimble will be required to appoint an appropriate teacher employed by the district as defined by the trial court and affirmed by this Court within forty-eight hours of the resolution of this appeal. The only other point ADC raises under this part of its argument is that

the YEA cannot succeed on the merits because it lacks standing. We have already determined that the trial court was correct in holding that the YEA has standing.

**{¶35}** ADC argues that the YEA failed to show it would suffer irreparable injury in the absence of the injunction. As this argument is substantially the same as Kimble's on this issue, for the same reasons, the record reflects that the YEA has shown irreparable injury. It represents the majority of the teachers in the school district and a teacher has a right to be appointed to the ADC. Without injunctive relief, no YEA member will be considered for appointment. Thus, 100% of its membership has been affected by Kimble's action. Without an injunction, the commission will meet, a CEO will be appointed, and the school district will be operated by the CEO, all without input from a teacher employed by the district as directed by the statute. The injury is the complete lack of teacher representation during this crucial initial phase of operation of the ADC.

**{¶36}** ADC also argues that YEA did not show that no third parties would be unjustifiably harmed. ADC relies on the principle of collateral estoppel or issue preclusion to prove this point. ADC argues that this issue was litigated in a recent case filed in Franklin County, *Youngstown City School District Board of Education, et al. v. State of Ohio, et al.*, 15 CVH08-7311, and that since the Franklin County Court of Common Pleas declined to grant the YEA's requested relief, the courts in Mahoning County should likewise follow suit.

**{¶37}** The Franklin County litigation is a challenge to the validity of R.C. 3302.10 itself, not a challenge to the effect of the statute in practice. The litigation

did not involve all of the same parties. The context of the Franklin County litigation involves claims about the constitutionality of the enactment of the recently amended version of R.C. 3302.10. In contrast, the current action arises from the application of the statute to a specific school district, and a very narrow aspect of the statute at that: the definition of "teacher employed by the district". For all these reasons, estoppel or preclusion do not apply in this appeal. We note, moreover, that while a declaration that the statute is unconstitutional will moot the issues in this appeal, an affirmance that this statute is constitutional has no effect on the current litigation or the issue at its heart.

**{¶38}** Finally, ADC states that injunctive relief has caused and will continue to cause unjustifiable harm to the students of the Youngstown School District and is against the public's best interests. However, ADC presents little argument on this issue and there are no facts in the record to support this assertion.

**{¶39}** Based on all the reasons stated above, ADC's second assignment of error is overruled.

Conclusion

**{¶40}** Two parties have appealed the trial court's ruling granting preliminary injunctions to the YEA regarding the appointment of a member to the ADC. While Appellants contend the YEA lacks standing, the record demonstrates that the YEA does have a substantial interest in appointment of a teacher to the ADC and that the requirements of standing by an association have been met. Appellants also argue that the requirements for obtaining a preliminary injunction have not been satisfied.

The trial court's judgment granting the preliminary injunction is reviewed for abuse of discretion. This record establishes that all the factors for granting a preliminary injunction have been met and Appellants have not demonstrated any abuse of discretion on the part of the trial court. Accordingly, the decision of the trial court with respect to the definition of "teacher" as used in the statute is affirmed. The stay granted by the trial court to Kimble to appoint an appropriate teacher to the ADC is automatically dissolved and any stay granted the parties by this Court is lifted. As the record shows that the trial court has actually determined the issues in declaratory judgment, its decision to grant a preliminary injunction is affirmed and the matter remanded to the trial court to take any further necessary action pursuant to our Opinion.

DeGenaro, J., concurs.

Robb, J., concurs.